**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **OFFICE VP, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **A-11-CV-741  LY** |
| | § | |
| **IDEAL HEALTH, INC. D/B/A THE** | § | |
| **TRUMP NETWORK; TTN, LLC; JIM** | § | |
| **FULFORD AND VITALIFE NETWORKS** | § | |
| **A/K/A TTN, ME; SCOTT STANWOOD;** | § | |
| **LOU DECAPRIO; AND ART KNAPP,** | § | |
| | § | |
| **Defendants,** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendants Ideal Health, Inc. d/b/a The Trump Network and TTN,

LLC's, Motion to Compel Mediation and to Stay Litigation Pending Mediation, (Clerk's Dkt. #10);

Motion of Defendant, Jim Fulford and Vitalife Networks d/b/a TTN.ME, to Dismiss the Complaint

For Lack of Personal Jurisdiction (Clerk's Dkt. #12); Motion of Defendant, Art Knapp, to Dismiss

the Complaint For Lack of Personal Jurisdiction (Clerk's Dkt. #13); Motion of Defendant, Scott

Stanwood, to Dismiss the Complaint For Lack of Personal Jurisdiction (Clerk's Dkt. #14); Motion

of Defendant, Lou DeCaprio, to Dismiss the Complaint For Lack of Personal Jurisdiction (Clerk's

Dkt. #12); and Plaintiff's Response to Defendants' Motions to Dismiss For Lack of Personal

Jurisdiction (Clerk's Dkt. #25).  The motions were referred by United States District Judge Lee

Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C.

§ 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local

Rules of the United States District Court for the Western District of Texas.  After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

On August 24, 2011, Plaintiff Office VP, LLC ("Office VP") filed this action, naming as defendants Ideal Health, Inc. d/b/a/ The Trump Network and TTN, LLC., (collectively the "Trump Defendants") Scott Stanwood ("Stanwood"), Lou DeCaprio ("DeCaprio"), Art Knapp ("Knapp"), and Jim Fulford and VitaLife Networks a/k/a TTN.ME. (collectively the "Fulford Defendants"). Office VP  is a Texas company, with its principal place of business in Texas.  (Compl. ¶ 2).  Office VP describes itself as in the business of custom "designing, creating and building proprietary internet operating system products which provide users of the products with the ability to manage businesses utilizing the internet."  (*Id*. ¶ 7).  The Trump Network is "a network marketing company that sells nutritional supplements, skin care products and other products through a network of distributors." (*Id*. ¶ 8).

Office VP alleges the Trump Defendants entered into a Hosting and Services Agreement ("Contract") on September 15, 2010, under which Office VP was to design a website for the Trump Defendants.  The website ("Hosted Product") was to include promotional and training content for The Trump Network's distributors, as well as an office management system. The Contract provided that Office VP would be the exclusive marketing provider with respect to any internet-marketing program, the Trump Defendants would not copy or use the Hosted Product except as allowed by the Contract, and would not knowingly allow any of its distributors to copy or use the Hosted Product. The Contract further forbade reverse engineering, disassembly or decompilation of the Hosted

Product, and provided all proprietary rights to the Hosted Product were retained by Office VP.  (*Id*. ¶¶ 9-12).

Office VP further alleges that, under the Contract, it was to be compensated in part by monthly service fees charged to each distributor who subscribed to the Hosted Product.  According to Plaintiff, to induce a lesser subscription fee, the Trump Defendants, through Stanwood, DeCaprio and Knapp, made material representations in writing as to the number of subscribers that would sign up.  Office VP alleges the representations were false, and the Trump Defendants knew they were false at the time they were made.  In addition, Office VP alleges the Trump Defendants failed to disclose they would insist on a limited "beta test" release of the Hosted Product, and failed to use their best efforts to promote the Hosted Product.  As a result, Plaintiff contends the actual number of subscribers fell far short of the number anticipated.  (*Id*. ¶ 13).

Following complaints by Office VP to the Trump Defendants, on March 11, 2011, they entered into an Addendum ("Addendum") to the Contract altering the payment terms.  According to Office VP, the Trump Defendants, through Stanwood, DeCaprio and Knapp, fraudulently induced Office VP to agree to the altered payment terms by failing to disclose that new subscribers would be allowed to enroll for substantially lower prices than stated in the Addendum, and by failing to disclose the Trump Defendants were working with Jim Fulford on a competing internet marketing program.  Office VP further alleges the Trump Defendants have failed to pay sums owed under the Contract and Addendum, and have failed to schedule Plaintiff to conduct training seminars as agreed under the Addendum.  (*Id*. ¶¶ 14-16, 20).

Office VP additionally alleges the Fulford Defendants subscribed to its products in November 2010.  As part of the subscription process, they entered into a User Agreement ("User Agreement")

whereby they agreed not to reverse engineer or otherwise attempt to discover the source code of the Hosted Product.  Under the User Agreement, the Fulford Defendants further agreed they would not use the Hosted Product for the benefit of a third party and acknowledged Plaintiff's copyrights.  (*Id*. ¶ 19).

According to Plaintiff, the Fulford Defendants, with the knowledge and support of the Trump Defendants, Stanwood, Knapp and DeCaprio, have copied Plaintiff's products and the content of its website, may have reverse engineered Plaintiff's software and have established a competing website. Office VP further alleges the Fulford Defendants, also with the knowledge and assistance of the Trump Defendants, Stanwood, DeCaprio and Knapp, have taken Plaintiff's property and rebroadcast it on the TTN.ME website owned and operated by the Fulford Defendants.  In addition, according to Office VP, the Fulford Defendants have used Plaintiff's property in webinars, at conventions, have posted it on YouTube, and otherwise destroyed the value of Plaintiff's property. (*Id*. ¶ 20).

Office VP asserts that the conduct of the Trump Defendants constitutes breach of contract, tortious interference, and fraud.  (*Id*. ¶¶ 21-28).  Plaintiff further asserts causes of action for breach of contract, tortious interference and theft against the Fulford Defendants. (*Id*. ¶¶ 23-26, 29).  In addition, Plaintiff asserts that the conduct of Stanwood, Knapp and DeCaprio constitutes tortious interference.  (*Id*. ¶¶ 25-26).

Defendants have now filed a series of motions in this case.  The Fulford Defendants, Stanwood, Knapp and DeCaprio maintain the Court lacks personal jurisdiction over them.  The Trump Defendants maintain any claims raised by Plaintiff must be submitted to alternative dispute resolution pursuant to the Contract.  Plaintiff has filed a response to the motions challenging personal jurisdiction, but has not responded to the Trump Defendants motion, although the motion was filed

four months ago.  As the issue is a threshold matter, the undersigned will consider the jurisdictional motions first.

## II.  PERSONAL JURISDICTION

### A.    Applicable Law

A court must consider both constitutional issues as well as the applicable statutes in resolving the issue of personal jurisdiction.  Thus, the Court must consider whether the Texas long-arm statute creates personal jurisdiction over the defendant; and whether the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution.  *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002).   The Texas long-arm statute, which authorizes the exercise of jurisdiction over a nonresident defendant who does business in Texas, extends to the limits of due process.  *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 716 (5th Cir. 1999); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999).  *See also CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996) (Texas Supreme Court has repeatedly interpreted long-arm statute "to reach as far as the federal constitutional requirements of due process will allow").  Accordingly, only the due process prong of the inquiry must be addressed.  *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000).

Due process for jurisdictional purposes consists of two elements.  First, the defendant must have sufficient "minimum contacts" with the forum state.  *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); *Wilson v. Belin,*  20 F.3d 644, 647 (5th Cir. 1994).  If a non-resident defendant has sufficient minimum contacts with the forum state, the court must then consider whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice."  *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S. Ct.

1026, 1033 (1987).  These "minimum contacts" may be analyzed in terms of specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984); *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003).  Specific jurisdiction exists when the contacts with the forum state arise from, or are directly related to, the cause of action.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S. Ct. 2174, 2182 (1985) (jurisdiction appropriate where activities "purposefully directed" at residents of forum state and litigation arises out of or relates to those activities); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).  General jurisdiction is proper when the defendant has other "continuous and systematic" contacts with the forum unrelated to the pending litigation.  *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).

If a nonresident defendant has sufficient minimum contacts with the forum state, the court must then consider whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice."  *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033 (1987); *Wilson,* 20 F.3d at 647.  This inquiry focuses on several factors, including: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the interest of the plaintiff in securing relief; (4) the interest of the judicial system in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental substantive social policies.  *Asahi Metal,* 480 U.S. at 113, 107 S. Ct. at 1033; *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999).

The plaintiff bears the burden of alleging facts in the complaint and affidavits sufficient to establish personal jurisdiction over a nonresident defendant. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999); *Caldwell v. Palmetto State Savs. Bank*, 811 F.2d 916, 917 (5th Cir. 1987). *See*

*also Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 326 (5th Cir. 1996) (where allegations are in dispute, party seeking to invoke jurisdiction bears burden of establishing sufficient contacts by nonresident defendant).  Prima facie evidence of personal jurisdiction is sufficient to satisfy plaintiff's burden.  *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000); *Felch*, 92 F.3d at 326. The Court will accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits submitted.  *Alpine View*, 205 F.3d at 215; *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999).

**B.    Discussion**

The Fulford Defendants, Knapp, Stanwood and DeCaprio all maintain this Court lacks personal jurisdiction over them.  They each state they are not residents of the State of Texas, lack minimum contacts with Texas, and are not parties to the Contract that forms the basis of this action. They each seek dismissal of Plaintiff's claims against them for lack of jurisdiction.

Plaintiff first contends personal jurisdiction is proper over Stanwood because he signed the Contract, which contains a forum selection clause mandating Travis County, Texas as the forum for all litigation related to the Contract.  (Compl. Ex. A at 6 & ¶ 8.2).  Stanwood points out he did not execute the Contract personally, but rather as Vice President of Ideal Health, Inc.  He maintains he is thus not personally subject to the jurisdiction of this Court under the terms of the Contract.  The undersigned need not address this argument, however, because Plaintiff also contends this Court has personal jurisdiction over Stanwood and the Fulford Defendants based on a forum selection clause in the Terms and Conditions of Use in the User Agreement for the Hosted Product ("User Agreement").  According to Jessie Musick ("Musick"), the President and owner of Office VP, both Stanwood and Fulford registered accounts with Office VP and in the process agreed to the conditions

7

of the User Agreement.  (Plf. Resp. Ex. A. ("Musick Aff.") ¶ 8).  In pertinent part, the User

Agreement provides:

> The Agreement shall be governed by the laws of the State of Texas, USA without
> regard to its choice or law or conflict of laws provisions. All legal actions in
> connection with the Agreement shall be brought in the state or federal courts located
> in Austin, Texas.

(Compl. Ex. D ¶ 21.5).

A forum selection clause is mandatory if the language clearly demonstrates the "parties' intent

to make [the forum] exclusive."  *City of New Orleans v. Municipal Admin. Servs., Inc.*, 376 F.3d

501, 504 (5th Cir. 2004).  A mandatory forum-selection clause is enforceable unless the defendant

shows that it is unreasonable.  *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 299 (5th Cir.

2004); *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th Cir. 1996);  *Kevlin Servs.*

*Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995).   A defendant can prove

unreasonableness by establishing one of the following: (1) the inclusion of the forum-selection

clause into the written contract was the product of fraud or overreaching; (2) the party opposing

enforcement of the clause "will for all practical purposes be deprived of his day in court" because

of the extreme inconvenience or unfairness of the forum specified in the clause; (3) the law specified

in the clause is fundamentally unfair and will cause plaintiff to be deprived of a remedy; or (4)

enforcement of the clause would go against a strong public policy of the forum state. *Haynsworth*

*v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*,

499 U.S. 585, 595, 111 S. Ct. 1522, 1528 (1991).  The defendant bears a "heavy burden of proof"

to establish unreasonableness   *Id*. (quoting *M/S Bremen b. Zapata Off-Shore Co.*, 407 U.S. 1, 17,

92 S. Ct. 1907, 1917 (1972) ); *see also Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 35 (5th

Cir. 1997) ("The burden of proving unreasonableness is a heavy one, carried only by a showing that the clause results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the [resisting party] of his day in court").

Neither Stanwood nor Jim Fulford have presented any evidence that they did not enter into the User Agreement, with its forum selection clause. Nor do they argue the clause does not mandate a Texas forum or that it is unreasonable. Both the Fifth Circuit and district courts in Texas have rejected a challenge for lack of personal jurisdiction when the defendant signed a contract containing a forum selection clause. *See, e.g., Kevlin*, 46 F.3d at 15 (reversing denial of motion to dismiss for lack of personal jurisdiction where contract at issue contained clause providing venue "shall be settled in Dallas County, Texas"); *Fin. Fed. Credit, Inc. v. A & J Pumping, Inc.*, 2010 WL 4678705, at *2 (S.D. Tex. Nov. 9, 2010 ) (denying motion to dismiss for lack of personal jurisdiction where contract sued on contained clause in which parties agreed to jurisdiction of court in Harris County, Texas); *XPEL Techs. Corp. v. Maryland Performance Works Ltd.*, 2006 WL 1851703, at *6-7 (W.D. Tex. May 19, 2006) (enforcing forum selection clause entered into as part of software user agreement). Accordingly, the undersigned concludes Plaintiff has established that the exercise of personal jurisdiction over Stanwood and the Fulford Defendants is proper in this Court.

As to Knapp and DeCaprio, Plaintiff contends each has directed intentionally tortious acts at Texas. Specifically, Plaintiff maintains Knapp and DeCaprio made materially false representations to Musick by phone and email during the negotiation of the Contract and thereafter. (Musick Aff. ¶¶ 3-6). According to Musick, these representations induced him to enter into the Contract and the Addendum. (*Id*. ¶¶ 5-6). "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."

*Wien*, 195 F.3d at 213.  Thus, "a single act by the defendant *directed at* the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (emphasis added).  Accordingly, the Fifth Circuit has held that a phone call directed at the forum state, in which the defendant allegedly lied to the plaintiff about his ownership of certain property, was a sufficient contact to subject the defendant to personal jurisdiction in a suit asserting fraud in the transfer of that property. *Lewis*, 252 F.3d at 359. *See also Brown v. Flowers Indus.*, 688 F.2d 328, 332-33 (5th Cir. 1982) (single telephone call initiated by defendant sufficient to confer personal jurisdiction over state law tort claim).  In this case, the communications by Knapp and DeCaprio to Musick within the state of Texas are the acts which Plaintiff asserts gave rise to his claims.  The undersigned finds those communications sufficient to establish the minimum contacts necessary for specific jurisdiction.

The inquiry thus turns to whether the exercise of jurisdiction is unreasonable. The burden is on the defendants to show the assertion of jurisdiction would be unfair. *Wien*, 195 F.3d at 215 Neither Knapp nor DeCaprio have presented any argument concerning the reasonableness of the exercise of jurisdiction over them by this Court.  They have thus failed to make any case, let alone a "compelling case," that the exercise of jurisdiction would be unreasonable. *See Wien*, 195 F.3d at 215 (once minimum contacts are established, a defendant must make a "compelling case" to establish exercise of jurisdiction is unreasonable); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) ("rare" situation in which sufficient minimum contacts exist but exercise of jurisdiction would be unreasonable).  Accordingly, the Court concludes the exercise of jurisdiction over Knapp and DeCaprio would not offend traditional notions of fair play and substantial justice.

### III.  MEDIATION

The Trump Defendants do not challenge the Court's jurisdiction over them.  However, they have filed a motion seeking to compel mediation of this action.  They point out that the Contact executed by Plaintiff that forms the basis of this action contains a clause requiring alternate dispute resolution.  In pertinent part, the Contract provides:

> Alternative Dispute Resolution. The parties agree that either party may elect to remove litigation to arbitration at any time prior to serving discovery or responding to discovery. A request for disclosures or a response to a request for disclosures shall not be considered discovery for purpose of this Section 8.3. If the plaintiff desires to elect arbitration, a request for arbitration must be included in the original petition or mutually agreed to by the parties.
>
> Prior to the filing of a Petition or initiating arbitration both parties shall submit all disputes to a minimum of one~half day of mediation. If a party initiates arbitration or litigation without first complying with this mandatory mediation provision, either party may file a motion to compel mediation and the Court must order the parties to participate in the mediation. The cost of mediation shall be split equally between the parties and shall be held in Austin, Texas. This mandatory mediation provision is included for the purpose of reducing or eliminating legal fees. Prior to a trail [sic] but after discovery. the parties shall participate in an additional half day of mediation as required by the local rules of Travis County, Texas. An additional mediation shall not be required if the matter has been removed to arbitration.

(Compl. Ex. A ¶ 8.3).

The language of the Alternative Dispute Resolution clause in the Contract is abundantly clear.  Plaintiff does not contend otherwise and, in fact, has filed no response to the motion.  Accordingly, the undersigned finds the Trump Defendants' motion to compel mediation should be granted.

### IV.  RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **DENY** the Motion of Defendant, Jim Fulford and Vitalife Networks d/b/a TTN.ME, to Dismiss the Complaint For Lack of Personal

11

Jurisdiction (Clerk's Dkt. #12); Motion of Defendant, Art Knapp, to Dismiss the Complaint For Lack of Personal Jurisdiction (Clerk's Dkt. #13); Motion of Defendant, Scott Stanwood, to Dismiss the Complaint For Lack of Personal Jurisdiction (Clerk's Dkt. #14) and Motion of Defendant, Lou DeCaprio, to Dismiss the Complaint For Lack of Personal Jurisdiction (Clerk's Dkt. #15).  The undersigned **FURTHER RECOMMENDS** that the District Court **GRANT** Defendants Ideal Health, Inc. d/b/a The Trump Network and TTN, LLC's, Motion to Compel Mediation and to Stay Litigation Pending Mediation (Clerk's Dkt. #10), and stay the case against these Defendants for a defined period to allow a mediation to take place.

## V.  OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 6th day of March, 2012.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE